IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 11 |
| WJO, INC. : | |
| : | CASE NO. 10-19894 (JKF) |
| DEBTOR : | |
| : | |

**OBJECTION OF TRISTATE CAPITAL BANK TO APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, PURSUANT TO 11 U.S.C. §§ 327 AND 1103 AND FED. R. BANKR. P. 2014, AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF PACHULSKI STANG ZIEHL AND JONES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS *NUNC PRO TUNC* TO JULY 1, 2011**

Tristate Capital Bank ("Tristate"), by and through its undersigned counsel, hereby files its objection ("Objection") to the Application of Official Committee of Unsecured Creditors for Order, Pursuant to 11 U.S.C. §§ 327 and 1103 and Fed. R. Bankr. P. 2014, Authorizing and Approving the Employment and Retention of Pachulski Stang Ziehl and Jones as Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to July 1, 2011 (the "Application"). In support thereof, Tristate states as follows:

**BACKGROUND**

1. On November 15, 2010 (the "Petition Date"), WJO, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").

2. Prior to the filing, various operating entities relating to the Debtor were merged into the Debtor.

3. By Order dated January 6, 2011, this Court established February 25, 2011, as the last day to file proof of claims in the above-captioned case.

4. Thereafter, on January 13, 2011, the United States Trustee appointed a Committee of Unsecured Creditors in this case (the "Committee").

5. The Committee is made up of three creditors: (1) CCA Financial LLC; (2) Ripple Design; and (3) an individual, Amber Veszpremi ("Veszpremi"). Eleanor M. Breslin ("Breslin"), counsel for Veszpremi, was selected as the Chairperson of the Committee.

6. On January 21, 2011, the Committee filed an application to retain Keifer and Tsarouhis, LLP ("Tsarouhis") as counsel to the Committee (the "Committee Application"), which Committee Application was thereafter approved by Order dated February 24, 2011 (Docket No. 231).

7. The Committee Application (i) explained the involvement of Tsarouhis prior to the filing of the case and its attorneys' knowledge of the facts of the case, (ii) described a past working relationship between counsel for the Debtor and Tsarouhis, and (iii) provided a list of 10 general services that Tsarouhis was to provide to the Committee if retained. *See* Docket No. 211.

8. In the eight months since the Petition Date, the Debtor has continued to operate as debtor-in-possession and has made substantial strides by, *inter alia*, reducing overhead, addressing certain operational issues of the Debtor, and resolving certain personal issues of the Debtor's principal that bled into this case, such that the Debtor is now seemingly poised to move forward with its proposed reorganization.

9. In fact, at the hearing before this Court on June 29, 2011, this Court (i) approved the Eighth Stipulation and Agreed Interim Order Granting the Motion of the Debtor for Further Interim Use of Cash Collateral (the "Cash Collateral Order"); (ii) authorized the release of the SWIF Funds in connection therewith; and (iii) ordered the Debtor to file its disclosure statement

- 2 -

and plan of reorganization such that a confirmation hearing is scheduled within ninety days of the June 29th hearing.

10. According to the terms of the Cash Collateral Order, the Debtor is authorized to use Tristate's cash collateral subject to an agreed upon budget.[1] The approved budget under which the Debtor is currently operating does not contain line items for future professional fees, but rather only includes those professional fees and expenses that have already been incurred and approved by this Court. The Debtor's expenditure of amounts greater than five percent (5%) of those budgeted is a default under the Cash Collateral Order.

11. The specific facts and circumstances of this Case have created significant challenges throughout, which have been addressed through the coordinated efforts of counsel involved in this Case. For instance, recently, the Committee and the Debtor obtained approximately $300,000 of the SWIF Funds to pump back into Debtor's operations to support the installation of the Debtor's hyperbaric chamber—a lump sum diversion of Tristate's cash collateral used to support operations and fund the installation of the hyperbaric chamber, which may ultimately lead to a successful reorganization of the Debtor.

12. Following the hearing on June 29th, it appears that this Case may now be set for disposition.

13. The parties were poised to continue coordination on the future course of this case when, prior to July 1, 2011, Pachulski Stang Ziehl and Jones ("Proposed Replacement Counsel") became involved with the Committee.

14. The Application is silent as to the facts and circumstances, if any, surrounding the internal Committee issues and or Committee's communications with outside parties and

---

[1] Pursuant to the terms of the Cash Collateral Order, the Committee is now precluded from bringing any challenges to Tristate's liens. *See* Cash Collateral Order at ¶ 24.

Proposed Replacement Counsel which led to the Committee's desire to engage Proposed Replacement Counsel.

15. However, on July 5, 2011, Proposed Replacement Counsel filed a withdrawal of appearance on behalf of Tsarouhis and advised that Tsarouhis would no longer be representing the Committee.[2]

16. On July 8, 2011, the Committee filed the Application.

17. While the Application appears substantially the same regarding the scope of services to be provided as the original Committee Application filed *six* months earlier - the Application does not provide any facts and circumstances disclosing, *inter alia*, the need for replacement of counsel at this stage of the case, if any, and the benefit to the estate, particularly the unsecured creditors, associated with replacing counsel at this late stage in the case on the terms set forth in the Application.

**OBJECTION**

18. Tristate objects to the Application because retention of Proposed Replacement Counsel is not in the best interest of the estate and would result in unnecessary duplication of services and a waste of estate resources.

19. Section 1103(c) of the Bankruptcy Code provides that a committee appointed in a case may perform certain specified tasks and "such other services *as are in the interest of those represented*." 11 U.S.C. § 1103(c), emphasis added.

20. Courts interpreting this language have construed the provision to impose a fiduciary duty on the part of members of a creditors' committee towards their constituent

---

[2] To date, Tsarouhis has not filed a motion to withdraw as counsel to the Committee. In the event Proposed Replacement Counsel's Application is not approved and the Committee is without counsel, Tristate believes such a motion would be required under Pennsylvania law. *See* Pa.R.Prof.C. 1.16(a)(3); *c.f. Commonwealth v. Staton*, 12 A.3d 277 (Pa. 2010) (discussing requirement to move for withdrawal).

Doc 6714080   Ver 1

members. *See Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 256 (3d Cir. 2001) (discussing fiduciary duties of committee members); *see also In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000).

21. Consistent with this obligation, courts have found that a committee has the "duty to determine what assistance it requires in order to perform its duties, when such assistance is required, and to select those best qualified to render such assistance." *Advisory Committee of Major Funding Corp. v. Sommers* (*In re Advisory Committee of Major Funding Corp.*), 109 F.3d 219 (5th Cir. 1997).

22. Proposed Replacement Counsel does not appear to have any existing relationship with the Debtor and it certainly does not have the understanding of this case that could only have been obtained through involvement during the prior eight months of this case.

23. Proposed Replacement Counsel will likely incur numerous hours reviewing pleadings, loan documents, orders, agreements, etc., to bring itself into a position to adequately represent the Committee. The estate should not occur any expense associated with duplication of prior counsel's efforts. Tristate expressly reserves its right to object to any duplication of efforts.

24. Tristate does not question Proposed Replacement Counsel's ability to adequately represent the Committee; however, Tristate objects to the rates and fees of Proposed Replacement Counsel for a case of this size, and at this stage of the proceedings.[3]

25. Tristate posits that the proposed rates of Proposed Replacement Counsel are not warranted given the size and status of this case. *See In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 854 (3rd Cir. 1994) (discussing calculation of reasonableness of rates).

---

[3] Specifically, a comparison of the Application and the Committee Application shows that the rates of Proposed Replacement Counsel are *3 times as much as prior counsel.*[3] *Compare* Application (with proposed rates of $705.00 and $675.00 per hour for proposed partners and $345.00 for associates) at ¶ 18 *with* Committee Application at ¶ 17.

26. Finally, Tristate does not consent to use of its cash collateral to pay the fees and expenses of Proposed Replacement Counsel. The Debtor's payment of such fees, absent inclusion in a court approved budget, would be a default under the Cash Collateral Order. Any approval of this Application should not be construed as a consent to the use of Tristate's cash collateral to pay the fees and expenses of Proposed Replacement Counsel.

27. Accordingly, Tristate submits that employment of Proposed Replacement Counsel on the terms proposed in the Application is not in the best interest of the estate as the retention would unnecessarily increase professional fees thereby depleting assets of the estate and diminishing the projected distribution to creditors.

28. Tristate reserves its right to assert additional objections up to, and at the time of, hearing on the Application.

WHEREFORE, Tristate respectfully requests that the Court deny the Application and provide such other and further relief as is just and proper under the circumstances.

**BENESCH FRIEDLANDER COPLAN & ARONOFF LLP**

By: */s/ Jennifer R. Hoover*
Jennifer R. Hoover (PA Bar No. 87910)
1650 Market Street, Suite 3628
Philadelphia, PA 19103
Telephone: (267) 207-2947
Facsimile: (267) 207-2949

- and -

David M. Neumann, Esquire
200 Public Square, Suite 2300
Cleveland, OH 44114-2378 US
Telephone: (216) 363-4500
Facsimile: (216) 363-4588

*Counsel for Tristate Capital Bank*